BDC Fin. L.L.C. v Barclays Bank PLC (2024 NY Slip Op 06294)

BDC Fin. L.L.C. v Barclays Bank PLC

2024 NY Slip Op 06294

Decided on December 17, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 17, 2024

Before: Manzanet-Daniels, J.P., Webber, Moulton, Rodriguez, Rosado, JJ. 

Index No. 650375/08 Appeal No. 3257 Case No. 2024-00312 

[*1]BDC Finance L.L.C., Plaintiff-Appellant,
v
Barclays Bank PLC, Defendant-Respondent.

Zaiger LLC, New York (Jeffrey H. Zaiger of counsel), for appellant.
Sullivan & Cromwell LLP, New York (Jeffrey Thomas Scott of counsel), for respondent.

Order, Supreme Court, New York County (Andrea Masley, J.), entered January 5, 2024, which denied the motion of plaintiff/counterclaim defendant (BDC) to enforce the remittitur from BDC Fin. LLC v Barclays Bank PLC (201 AD3d 458 [1st Dept 2022]), unanimously reversed, on the law and the facts, with costs, and the motion granted.
We remanded this matter "for a trial of whether [defendant/counterclaim plaintiff Barclays' loss] calculation was reasonable under the circumstances" (id. at 459 [internal quotation marks omitted]). As argued by Barclays,if the trier of fact finds that Barclay's calculation was unreasonable, it would be entitled to $0, and BDC would be precluded from recovering its $300 million in collateral, which Barclays has held since 2008. By contrast, BDC contends that, if the trier of fact agrees with BDC's expert, it is entitled to $124.9 million of its collateral.
A trial regarding damages on Barclays' counterclaims might conceivablyresult in a payment to BDC, as "the ISDA Master Agreement's [FN1] formulae for calculating termination payments are not to be equated with, or interpreted rigidly in accordance with, the quantification of damages at common law for breach of contract" (Lehman Bros. Intl. [Europa] v AG Fin. Prods., Inc., 60 Misc 3d 1214[A], 2018 NY Slip Op 51100[U], *17 [Sup Ct, NY County 2018] [internal quotation marks omitted], affd 168 AD3d 527 [1st Dept 2019]). In fact, "the ISDA Master Agreement specifically contemplates that 'Loss' may be a positive number, i.e., that a 'Loss' could result either in a payment due to or a payment due from" the party that issued the early termination notice (Bank of N.Y. Mellon Trust Co., N.A. v Solstice ABS CBO II, Ltd., 2012 WL 13070212, *7 n 3, 2012 US Dist LEXIS 204952, *21 n 3, [SD NY, March 28, 2012, 09 Civ. 9415 (DAB)]).
In addition, BDC did not waive its right to the return of its collateral by failing to appeal from a prior order of the court that divided the trial into phases. The court correctly decided to first try BDC's claim that Barclays had breached the parties' contract by failing to return $5,080,000 on October 7, 2008. If BDC had prevailed, Barclays' counterclaim based on BDC's failure to meet Barclays' October 10 and 14 collateral calls would have been moot because Barclays would not have had the right to issue collateral calls after it had breached. Furthermore, it would have been futile to force BDC to litigate whether Barclays had "calculate[d] reasonably and in good faith the net amount payable on Early Termination" before a court decided whether "Barclays was entitled to calculate the amount payable on [such] Termination." If Barclays had breached on October 7, it would not have had the right to subsequently calculate the amount payable on Early Termination.
Contrary to Barclays' contention, BDC is not judicially estopped from demanding a trial on whether it is entitled to $124.9 million of its collateral back. Even if BDC took an inconsistent position by [*2]moving for summary judgment dismissing Barclays' counterclaims, it did not prevail on that position (see e.g. Matter of Stewart v Chautauqua County Bd. of Elections, 14 NY3d 139, 149-150 [2010]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 17, 2024

Footnotes

Footnote 1: ISDA stands for International Swap and Derivatives Association. The parties in this case entered into an ISDA Master Agreement.